## HOSTETTER CO. v. GALLAGHER STORES.

(Circuit Court, S. D. New York. November 2, 1905.)

No. 8,786.

1. EVIDENCE—OPINION EVIDENCE—COMPETENCY OF WITNESSES—EFFECT OF EVIDENCE.

The testimony of witnesses who from experience were entirely familiar with the color, taste, and smell of a certain bitters that a liquid sold by defendant by that name was not such bitters, but was an imitation, is competent, and, where not directly contradicted and corroborated by the circumstances, is sufficient to establish the fact.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 2355.]

2. TRADE-MARKS AND TRADE-NAMES—NATURE OF UNFAIR COMPETITION—SALE OF IMITATION FOR GENUINE ARTICLE.

Evidence showing that defendant, which conducted 20 stores, advertised in its general catalogue to supply to its customers Hostetter's Bitters without limit as to quantity at a price only two-thirds of that at which such bitters are sold by complainant, the manufacturer, and that defendant did supply to its customers calling for such bitters an imitation, sometimes, when desired, placing the same in complainant's bottles, but without using its labels or trade-mark, is sufficient to establish unfair competition and to entitle complainant to an injunction and an accounting.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trade-Marks and Trade-Names, §§ 82, 83, 104–106.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity. Suit to restrain unfair competition.

A. H. Clarke, for complainant.

Alexander & Green (Clifton P. Williamson, of counsel), for defendant.

HOLT, District Judge. This is a suit to restrain unfair competition in trade. The complainant, the Hostetter Company, has manufactured and sold for many years an article known as "Hostetter's Bitters." It has no patent. It manufactures these bitters under a secret process. The bitters have always been put up and sold in bottles of a certain style and of a size known as "sixes"; that is, six bottles contain a gallon. They are sold in cases containing a dozen bottles at a standard price of $9 a case, or $4.50 a gallon. These bottles have affixed two labels, containing certain pictures and printed matter, which have been duly registered as a trade-mark. The complainant has never sold its bitters in bulk, or in demijohns, or in any other receptacle than the said bottles, which have always been of a uniform size. The defendant is a corporation which owns and conducts about 20 different stores in the city of New York at which wine and liquor are sold. It publishes a retail price list, which is gratuitously distributed to the public, and in which, among other bitters, it advertises as having for sale Hostetter's Bitters at the price of $3 per gallon. The evidence shows that a number of persons applied at some of these stores for Hostetter's Bitters, and upon such request received a certain liquid contained in demijohns, and paid for it at the rate of $3 a gallon. In some instances the pur-

chasers asked to have the liquid placed in Hostetter bottles, and thereupon the persons making the sale obtained empty Hostetter bottles, having the name of Hostetter blown in the glass, but apparently not bearing the label protected by the trade-mark, and filled such bottles and delivered them in accordance with the purchaser's request. Witnesses entirely familiar with the color, taste, and smell of Hostetter's Bitters testified that they had examined and tasted the contents of such bottles and demijohns, and that the liquid contained in them was not Hostetter's Bitters, but an imitation of them. The defendant offered several witnesses, who were employés in their stores, who testified, in substance, that they did not carry Hostetter's Bitters in stock in the particular store in which they were serving; that they secured orders for Hostetter's Bitters from some of the plaintiff's witnesses; that they sent such orders to a Mr. Vanderbach, who was in charge of the defendant's bottling department at headquarters, and thereafter received from Vanderbach the bitters which they delivered. Vanderbach testified that he purchased the bitters from Markey & Co. as Hostetter's Bitters. Charles A. Markey, a young shipping clerk for Markey & Co., testified, in substance, that in 1904 they had about 10 gallons of Hostetter's Bitters in bulk; that Mr. Markey, the head of the firm, had emptied it out of some bottles, the labels of which had been destroyed by rats; and that they had sold some of such bitters to the Gallagher Stores. On cross-examination he admitted that he did not see Mr. Markey pour out the bitters. He said that Mr. Markey told him so. He also testified that Mr. Markey, the head of the firm, who is alleged to have poured out these bitters from Hostetter bottles, was at his store that morning, and had directed him (young Markey) to come down and testify in the case. The elder Markey did not appear on the stand.

This is all the evidence in the case that the liquid contained in the demijohns sold by the defendant was in fact Hostetter's Bitters; and, in my opinion, the evidence preponderates that it was an imitation bitters. The claim that Markey had obtained genuine Hostetter's Bitters in bottles, that rats had gnawed the labels, and that, instead of sending to the agent of the Hostetter Company at New York for new labels, he emptied the bitters out of the original bottles into demijohns, and subsequently sold, at $3 a gallon, bitters for which he must have paid $4.50, is extremely improbable, and the fact that the defendant included in its standard price list, as one of the articles which they permanently dealt in, Hostetter's Bitters at $3 a gallon, shows, in my opinion, that they relied upon some other source of supply than that which could be obtained from a few bottles, the labels of which had been devoured by rats. The defendant's attorneys assert that the complainant had no exclusive right to the use of the name "Hostetter." That has been so held in this court. Hostetter v. Fries (C. C.) 17 Fed. 621. But it was held in the same case that if the defendant sold, as Hostetter's Bitters, something which was not Hostetter's Bitters, the Hostetter Company was entitled to restrain it. The defendant's counsel asserted that the evidence that the bitters sold by the defendant were not in fact made by the complainant is insufficient. He asserts that there should have been proof of an analysis of the genuine bitters and of the purchased bitters,

142 F.—14

and cites, in support of this claim, Hostetter Co. v. Bower (C. C.) 74 Fed. 235, and Hostetter Co. v. Comerford (C. C.) 97 Fed. 585. In both those cases there was a strong conflict of evidence whether the bitters sold were, in fact, Hostetter's Bitters, and under those circumstances Judge Coxe held that the evidence, as it stood, did not preponderate in favor of the complainant, and added that, if a chemical analysis had been made and proved, that would have settled the question. But in this case the evidence for the complainant, on the part of witnesses of large experience and knowledge of Hostetter's Bitters, that, judging of the liquid sold by the senses, they were confident that it was not Hostetter's Bitters, was certainly competent evidence. The defendant offered substantially no evidence to the contrary. It could have called the elder Markey. It could have explained on what source of supply it relied when it put Hostetter's Bitters, at $3 a gallon, in its price list as an article which it was prepared at all times to furnish to its customers. It could itself have had a chemical analysis made of the admittedly genuine bitters and those which it sold. The defendant's counsel claims that there was no attempt to deceive the purchasers. There is no doubt that the goods were sold in demijohns bearing no labels, and that the trade-mark of the complainant was not infringed. But the thing sold was advertised and sold as Hostetter's Bitters. In my opinion the evidence establishes that it was not.

My conclusion is that the complainant is entitled to a decree restraining the defendant from manufacturing or selling as Hostetter's Bitters any article which in fact is not Hostetter's Bitters, and to a reference to ascertain what damage, if any, has been caused in the past by its sale of such imitation bitters.