BROADCAST MUSIC, Inc., et al. v. HAVANA MADRID RESTAURANT CORPORATION.

No. 249, Docket 21309.

United States Court of Appeals Second Circuit.

May 27, 1949.

---

Rosenman, Goldmark, Colin & Kaye, New York City (Godfrey Goldmark and Murray Cohen, New York City, of counsel), for plaintiffs.

A. Allen Saunders, New York City, for defendant.

Before L. HAND, Chief Judge, and AUGUSTUS N. HAND and FRANK, Circuit Judges.

FRANK, Circuit Judge.

Plaintiffs contend that, as the testimony of the witness Castro was uncontradicted, unimpeached by anything appearing in the record, and not inherently improbable, the trial judge was obliged to accept it as true, and that therefore the judge's findings are "clearly erroneous." We cannot agree.

Whether the so-called "uncontradicted testimony" rule has been adopted by the Supreme Court we are not at all sure.[1] Sponsors of that rule point to Chesapeake & Ohio Ry. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 456, 75 L.Ed. 983. But there the Court was at pains to explain that the testimony of the witness—not as to something he did, saw or heard on a specific occasion, but as to what, in ordinary circumstances, was a reasonable time for delivery of a shipment by a railroad company—was "so completely corroborated by the undisputed facts * * * as to put it beyond the reach of a fair doubt." The rule, absent such qualifications, has been rejected in several states,[2] and has little to commend

---

[1] See Quock Ting v. United States, 140 U.S. 417, 11 S.Ct. 733, 851, 35 L.Ed. 501.

[2] See 8 A.L.R. 796, Annotations.

Perhaps, at any rate, it is inapplicable to the findings of a trial judge in a jury-less case. Cf. Golden Eagle Farm Products v. Approved Hydrating Co., 2 Cir., 147 F.2d 359, 360, Note 1; Cohen v. Commissioner, 2 Cir., 148 F.2d 336, 337; Railway Mail Association v. Chamberlin, 8 Cir., 148 F.2d 206, 207; 2 Collier on Bankruptcy (14th Ed.) 966 (1948 Supp.) note 26, commenting on Matter of New Style Hat Mfg. Co., D.C., 43 F.Supp. 122.

it rationally.[3] For the demeanor of an orally-testifying witness is "always assumed to be in evidence."[4] It is "wordless language." The liar's story may seem uncontradicted to one who merely reads it, yet it may be "contradicted" in the trial court by his manner, his intonations, his grimaces, his gestures, and the like—all matters which "cold print does not preserve" and which constitute "lost evidence" so far as an upper court is concerned.[5] For such a court, it has been said, even if it were called a "rehearing court," is not a "reseeing court."[6] only were we to have "talking movies" of trials could it be otherwise. A "stenographic transcript correct in every detail fails to reproduce tones of voice and hesitations of speech that often make a sentence mean the reverse of what the words signify. The best and most accurate record is like a dehydrated peach; it has neither the substance nor the flavor of the fruit before it was dried."[7] It resembles a pressed flower. The witness' demeanor, not apparent in the record, may alone have "impeached" him.[8] The alleged "rule," if taken literally, would return us to the practice of "trial by deposition," which common-law procedure rejected and which, in recent years, has been rejected in federal noncommon law trials as well.[9]

Without doubt, the result of our procedure is to vest the trial judge with immense power not subject to correction even if misused: His estimate of an orally testifying witness' credibility may stem from the trial judge's application of an absurd rule-of-thumb, such as that when a witness wipes his hands during his testimony, unquestionably he is lying;[10] but, unless the judge reveals of record that he used such an irrational test of credibility, an upper court can do nothing to correct his error. We thus have what Tourtoulon called the "sovereignty" of the trial judge. Demeanor, to be sure, is no infallible guide to reliability of testimony; yet, as matters now stand, it is one of the best guides available.

We shall, however, assume, arguendo, that the rule prevails in the federal courts. Even so, it will not avail plaintiffs. For among the exceptions to the rule is this: It is inapposite if the witness has an "interest."[11] The mere fact that he is an ordinary employee may not be enough to show such an interest where, as in the Chesapeake & Ohio case, his testimony is "completely corroborated by the undisputed facts." But here the witness was not only a general employee of the plaintiff, Peer International Corp., sole owner of the copyrights to seven of the songs, but he had been specifically requested by the plaintiff, Broadcast Music, Inc. (the exclusive licensee of the copyrights), to act as a sort of detective in obtaining the very evidence as to which he testified. The trial judge correctly said that such a witness is

---

[3] A somewhat cynical commentator has said: "As applied to uncontradicted testimony there are two broad rules: one, that the uncontradicted testimony of a witness is for the jury; the other, that the jury may not arbitrarily reject the uncontradicted testimony of a witness; and the courts apply one or the other as they mean to leave the matter to the jury, or to interfere. In the statement of these two rules the courts sometimes give preference to the power of the jury, and sometimes, on the other hand, require the jury to accept uncontradicted testimony unless there is some apparent reason against it." 8 A.L.R. 796, 797.

[4] Wigmore, Evidence, § 949.

[5] Morris Plan Industrial Bank v. Henderson, 2 Cir., 131 F.2d 975, 977.

[6] Powell and Wife v. Streatham Nursing Home [1935] A.C. 243, 249–250.

[7] Ulman, The Judge Takes The Stand (1933) 267.

[8] See, e.g., Quock Ting v. United States, 140 U.S. 417, 421, 11 S.Ct. 733, 851, 35 L.Ed. 501; Arnstein v. Porter, 2 Cir., 154 F.2d 464, 470, and cases there cited.

An upper court "of necessity has to operate in the partial vacuum of the printed record"; Employers Liability Ass'n Corp. v. Sweatt, 95 N.H. 31, 57 A.2d 157, 160.

[9] See, e.g., Arnstein v. Porter, 2 Cir., 154 F.2d 464, 471–472.

[10] See Quercia v. United States, 289 U.S. 466, 468, 53 S.Ct. 698, 77 L.Ed. 1321.

[11] See, e.g., Quock Ting v. United States, 140 U.S. 417, 421, 11 S.Ct. 733, 851, 35 L.Ed. 501; Sonnentheil v. Christian Moerlein Brewing Co., 172 U.S. 401, 402, 408, 19 S.Ct. 233, 43 L.Ed. 492; Railway Mail Association v. Chamberlin, 8 Cir., 148 F.2d 206, 207; Doering v. Buechler, 8 Cir., 146 F.2d 784, 785–786.

"interested." Hostetter v. Bower, C. C., 74 F. 235; Hennessy v. Wine Growers' Association, D. C., 212 F. 308, 310. As Castro's testimony had no corroboration, this case comes within the "interest" exception to the rule. We may not, then, disregard the trial judge's finding of fact based obviously on his disbelief of the testimony on which plaintiffs rely.[12]

It is suggested that the judge believed Castro but refused to accept his testimony solely because it was not corroborated. We do not so read the judge's opinion. We think he had the "uncontradicted witness" rule in mind, and, accordingly, pointed to the witness' interest and to the lack of corroboration in order to bring the case within the exception. Plaintiffs urge that some of the other reasons assigned by the judge are unsound. We need not consider whether or not that is true, for we think it enough that he gave a sound reason.[13]

Affirmed.

---

[12] Judges are usually reluctant to call a witness a liar. See Moore, Facts (1908) §§ 1048–1050. They prefer more polite locutions, such as saying his testimony was "latitudinous"; see Mr. Justice Baldwin in Poole v. Nixon, 19 Fed. Cas. 992, at p. 996, No. 11,270.

Moreover, as may well have been the case here, the judge may think the witness did not commit perjury but was honestly mistaken, because of bias or for other reasons.

[13] Plaintiffs cite United States v. United States Gypsum Co., 333 U.S. 364, 394– 395, 68 S.Ct. 525, 542, 92 L.Ed. 746. We think that case inapposite. It teaches that the findings of a trial judge may have somewhat less significance than that of a jury or that of some administrative agencies. It also teaches that a trial judge's finding may be "clearly erroneous," although apparently supported by oral testimony, where that testimony "is in conflict with contemporaneous documents" of such character that it would be unreasonable to believe what the witness said.