CENTER SAVINGS & LOAN ASSOCIA-
TION; Trident Federal Savings & Loan
Association; Colonial Savings & Loan
Association; and Spencer Savings &
Loan Association, Plaintiffs,

v.

PRUDENTIAL–BACHE SECURITIES
INC., Defendant.

No. 86 Civ. 5467 (CSH).

United States District Court,
S.D. New York.

Jan. 15, 1987.

Young, Tarshis & Dimiero, P.C., New York City, for plaintiffs; Alfred D. Dimiero, Lisa M. Palumbo, Sylvia Khatcherian, of counsel.

Brown, Raysman & Millstein, Cahill Gordon & Reindel, New York City, for defendant; Thomas F. Curnin, Thomas J. Kavaler, Lisa Pearson, Anthony Paduano, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiffs, five Savings and Loan Associations, bring this action against Prudential-Bache Securities, Inc. ("Pru–Bache") alleging fraud under various federal securities laws. The complaint also alleges state law and common law claims under pendent jurisdiction. Defendant moves to dismiss all counts under various theories.

### I.

The complaint alleges that "on or about February 21, 1985", Pru–Bache agreed with Landbank Equity Corporation ("Landbank"), a Virginia company, whereby Pru–Bache would "market first and second mortgage loans originated and packaged by Landbank." ¶ 7. During May and July 1985, the five various plaintiffs made specific "purchases of Landbank mortgage loan portfolios" through Pru–Bache, the particulars being alleged in ¶ 13.

Plaintiffs are aggrieved because Landbank defaulted and filed under the bankruptcy laws in September 1985. Plaintiffs have lost considerable sums on these transactions.

Plaintiffs invoke the following fraud provisions of the Federal Securities Laws in seeking to hold Pru–Bache liable for these losses: section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77$l$ (2); section 15(c) of the Securities Exchange Act of 1934, 15 U.S.C. § 78$o$ (c)(1) and its accompanying rule; and section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and its accompanying rules.

Defendant contends that none of plaintiff's fraud claims are pleaded with that specificity required by Rule 9(b), F.R.Civ.P. In addition, defendant argues that no private rights of action arise under sections 17(a) or 15(c) of the 1934 Act.

The parties' briefs contain other arguments with respect to the state law and common law claims. For reasons which will appear, I need not address those issues at this time.

### II.

Plaintiffs claim they lost money because they purchased the mortgage loan portfolios from Landbank believing Landbank to be a solvent, well-managed company, with its mortgages fully insured, whereas in fact Landbank was in a precarious financial condition, unable to service its loans properly, and without insurance covering them. Plaintiffs' losses accrued when Landbank went bankrupt.

These allegations demonstrate with sufficient clarity why plaintiffs say they lost money investing in Landbank-originated mortgages. But the complaint fails to specify fraud on the part of Pru–Bache.

Whatever less demanding standards may exist in other circuits, the Second Circuit requires meaningful specificity in pleading

fraud. Representations must be spelled out: who said what to whom, when, and with what effect? So too with omissions: what facts were not disclosed, by whom, when, and how were they material?

Upon these threshold inquiries, the law superimposes the requirement of fraudulent intent: "scienter", in legal parlance. Plaintiff charges defendant with fraud, not negligence. In lay parlance he says defendant is not just careless or stupid, he is a crook. Familiar principles, rooted in fairness, require plaintiff to say why that is so, and say it in detail.

The complaint at bar fails these tests.

As to representations about Landbank, the complaint alleges that sales of Landbank loans "in the State of New Jersey"[1] were handled from the Pru–Bache office in Short Hills, New Jersey by Arthur L. Snyder and Andrew Compton. ¶ 10. The complaint continues that "from March 1985 through July 1985, Pru–Bache, through its employees or representatives, including Snyder and Compton, actively solicited plaintiffs by telephone, in person and through the mails to purchase the Landbank mortgage loan portfolios." ¶ 11.

One may pause at this juncture to observe that plaintiffs give only the most general, five-month time frame; they include unnamed and unnumbered "employees or representatives" together with Snyder and Compton; they make no effort to identify which Pru–Bache representative importuned which representative at any of the five separate plaintiff loan associations; and they do not specify whether these communications, between unnamed individuals at unspecified times, were oral or in writing.

To resume: plaintiffs allege that Pru–Bache employees represented that Landbank mortgage loan portfolios promised a fixed rate of return; that they were fully guaranteed and insured; and that Pru–Bache had investigated "all aspects of the transaction and the financial condition of Landbank" and was "secure" in its recommendation of purchase. Snyder and Compton are identified as having told "plaintiffs" that the Landbank mortgage loan portfolios were "going fast", and with having "pressured certain [unnamed] of the plaintiffs to act quickly" ¶ 12.

These representations were false, ¶ 19 continues, because Landbank was in fact in a precarious financial condition, lacked sufficient assets to guarantee the mortgages, and was uninsured. As to Pru–Bache's stated basis for recommending the investments, plaintiffs alleges, this time "upon information and belief," that Pru–Bache had failed to discharge its duty of reasonable investigation in connection with the representations being made by Landbank.

As to omissions, plaintiffs allege that the true facts concerning Landbank, summarized above, were not stated by Pru–Bache to plaintiffs. These material facts, plaintiffs allege, "were either known to Pru–Bache or should have been known to Pru–Bache if Pru–Bache had acted reasonably and conducted a reasonable and diligent investigation of Landbank." ¶ 20. ¶ 21 continues, again "upon information and belief", that "the statements, representations and omissions of Pru–Bache were materially untrue and incomplete and were made with a reckless disregard of the truth and their interests of the public and plaintiffs."

### III.

Little need be added to this analysis of the complaint to demonstrate that the allegedly fraudulent representations are insufficiently pleaded. This is not a case where an individual plaintiff charges an individual defendant with fraud. Here five separate loan associations, each operating independently of the other, each with its own staff of employees and representatives, lump themselves together for pleading purposes and charge Pru–Bache with having defrauded them through the unspecified declarations, some in writing,

---

1. Of the five plaintiff loan associations, four (Center, Lakeland, Colonial, and Spencer) are alleged to be chartered under New Jersey law and authorized to transact business in New Jersey. The fifth plaintiff, Trident, is described only as "a federally chartered savings and loan association duly authorized to transact business." Complaint, ¶¶ 1, 2.

some oral, of employees and representatives, some identified, some not, over a five-month period of time.

Plaintiffs' familiar Rule 9(b) obligations are to specify:

"... 1) precisely what statements were made in what documents or oral representations or what omissions were made, and 2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, 3) the content of such statements and the manner in which they misled the plaintiff, and 4) what the defendants obtained as a consequence of the fraud." *Todd v. Oppenheimer & Co., Inc.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978).

Where a number of individuals are charged together as participants in a fraudulent scheme, specific allegations must be made with respect to each particular individual. *Zerman v. Ball*, 735 F.2d 15, 22–23 (2d Cir.1984), and cases there cited. The same practical considerations arise where more than one plaintiff claims to have been defrauded, at different times and by different people; and where the defendant, although a single entity, is sought to be bound by the declarations of a number of employees or representatives.

In short, the complaint at bar is entirely insufficient in respect of the details of the alleged fraudulent representations.

Certain of defendant's representations, and all of its allegedly fraudulent omissions, may more usefully be considered in the context of scienter. I accept, as I must in considering the legal sufficiency of the pleading, plaintiffs' allegations that Pru–Bache representatives recommended Landbank mortgages as sound investments. To paraphrase the old song, when an investment broker is trying to make a sale "seldom is heard an unencouraging word." But such generally encouraging statements as are alleged in the complaint are not actionable, in the absence of further specific allegations of fraud. Encouraging characterizations of investments, in and of themselves, "do not constitute representations of fact that could be

actionable under the securities laws." *Zerman v. Ball, supra*, at 21 (the proffered bonds were "marvelous"). Whether such declarations be regarded as statements of fact or opinion, their utterance does not state a claim for securities fraud unless the plaintiff also alleges that at the time of the declarations, the views expressed were not honestly held by the declarant or were known to be false, or were recklessly arrived at. *Zerman v. Ball, supra*, at 21; *Bourdages v. Metal Refining Ltd.*, [1984–1985 Transfer Binder] CCH Fed.L.Rptr. ¶ 91,828 (S.D.N.Y.1984); *Darvin v. Bache Halsey Stuart Shields*, 479 F.Supp. 460, 464 (S.D.N.Y.1979); *Marbury Management, Inc. v. Kohn*, 470 F.Supp. 509, 512 (S.D.N.Y.) and cases cited. *See also Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 117–18 (2d Cir.1982) ("economic prognostication, though faulty, does not, without more, amount to fraud", in the absence of allegations of "particulars" as to why declarant's "stated reliance on those forecasts was false or misleading"), quoting *Polin v. Conductron Corp.*, 552 F.2d 797, 805 (8th Cir.), *cert denied*, 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977). Incantation of the statutory definition of fraud, with a general reference to the allegations of the complaint, is equally insufficient. *Decker*. at 120.

Plaintiffs' complaint does not pass muster under these standards.

As for the omissions alleged in the complaint, I accept that if Landbank's economic situation was bleak at a time when Pru–Bache was describing it to plaintiffs as sound, material facts were not disclosed to plaintiffs. But the issue is not Landbank's true condition at the time Pru–Bache recommended plaintiffs' investments. Rather, it is whether Pru–Bache knew unpleasant truths concerning Landbank at the time of Pru–Bache's investment recommendations, or acted in reckless disregard of those truths.

On this aspect of the case, the thrust of plaintiffs' theory is that Pru–Bache had not conducted that diligent inquiry into Landbank's condition which it gave plaintiff to

understand had been preformed. Of course, an allegation that Pru–Bache "should have known" these truths will not do; negligence is not fraud. Liability in fraud is posited, as I have said, upon knowledge of falsity or reckless disregard of truth.

■ Here it is significant to observe that plaintiffs' allegations are made "upon information and belief." The general rule in this circuit is that Rule 9(b) pleadings cannot be based on "information and belief." *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972). An exception applies where matters are particularly within the adverse party's knowledge; but even there, the pleader may invoke the exception only if he includes a statement of facts upon which his pleaded information and belief are founded. *Posner v. Coopers & Lybrand,* 92 F.R.D. 765, 769 n. 3 (S.D.N.Y.1981), citing *Segal.* To come within the exception and thus satisfy Rule 9(b), Judge Weinfeld wrote in *Crystal v. Foy,* 562 F.Supp. 422, 425 (S.D.N.Y.1983):

> "... plaintiff's complaint must allege (1) specific facts; (2) sources that support the alleged specific facts; and (3) a basis from which an inference of fraud may fairly be drawn."

Plaintiffs' complaint is insufficient because it alleges Pru–Bache's failure to inquire in only the most general and conclusory terms. Second Circuit cases make it crystal clear that such allegations do not suffice. In *Ross v. A.H. Robins Co.,* 607 F.2d 545 (558) (2d Cir.1979), the Court wrote:

> "It is reasonable to require that the plaintiffs specifically plead those events which they assert give rise to a strong inference that the defendants had knowledge of the facts contained in ... the complaint or recklessly disregarded their existence."

*See also Shemtob v. Shearson Hammill & Co., Inc.,* 448 F.2d 442, 444–45 (2d Cir. 1971).

I recognize, as plaintiffs stress, that the last sentence of Rule 9(b) permits the pleader to allege "knowledge" and "other condition of mind of a person ... generally." While the Second Circuit, consistent with that language, recognizes that "great specificity [is] not required with respect to ... allegations of ... scienter", *Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir. 1985), this does not mean that bare conclusory allegations such as those at bar are sufficient. Most recently, Judge Timbers has written for the Second Circuit in *Connecticut National Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987):

> "The absence of a requirement that scienter be alleged with 'great specificity' is based on the premise that a plaintiff realistically cannot be expected to plead a defendant's actual state of mind. *Ross, supra,* 607 F.2d at 558. This does not mean, however, that plaintiffs are relieved of their burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter. 'It is reasonable to require that the plaintiffs specifically plead those events' which 'give rise to a strong inference' that the defendants had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."

The complaint at bar fails under Rule 9(b) with respect to any fraud theory. Insofar as plaintiffs seek to allege violations of section 12(2) of the 1933 Act and section 10(b) of the 1934 Act, I will grant leave to replead.[2] But I will not grant leave to replead under section 17(a) of the 1933 Act and 15(c) of the 1934 Act for reasons stated *infra.*

### IV.

■ I have previously concluded that section 17(a) of the 1933 Act does not confer a private right of action. *Ackerman v.*

---

**2.** I defer until the filing of an amended pleading (if plaintiffs are so advised) the questions of time bar under section 12(2); and whether plaintiffs' mortgage purchases constitute "securities." P/B raises that latter issue *en passant* in

a reply brief footnote (at 6), without taking a four square position. If it wishes to press that defense, it must do so with particularity and citations to authority.

*Clinical Data, Inc.,* [1985–86 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 92,207 (S.D. N.Y.1985) [Available on WESTLAW, 1985 WL 1884]. Currently the question must be regarded as open in the Second Circuit. *Zerman v. Ball, supra,* at 23. Accordingly I adhere to the reasoning expressed in *Ackerman.* Other courts have also concluded that section 17(a) confers no private right of action. *See, e.g., Landry v. All American Assurance Co.,* 688 F.2d 381, 390 (5th Cir.1982).

For comparable reasons, I reach the same conclusion with respect to section 15(c)(1) of the 1934 Act. While earlier authority in this Court suggests a different result, at least in respect to a broker's preferential sale order, *Opper v. Hancock Securities Corp.,* 250 F.Supp 668 (S.D. N.Y., *aff'd per curiam* ), 367 F.2d 157 (2d Cir.1966), more recent authority denies a general private right of action under this section. *See SEC v. Seaboard Corp.,* 677 F.2d 1301, 1313–14 and n. 16 (9th Cir.1982), and other cases cited in defendant's main brief at 35–36. Again, I regard the question as presently open in the Second Circuit. In line with the modern trend of authority elsewhere, I decline to imply a private right of action under section 15(c)(1).

Accordingly these claims will be dismissed without leave to replead.

### V.

Pru–Bache contends that if no viable federal securities claims are pleaded, the state and common law claims must also be dismissed under *United Mine Works of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). █ If federal subject matter jurisdiction depends solely upon the securities fraud claims, I agree. However, if diversity of citizenship is present, the non-federal claims cannot be dismissed as merely pendent. In that circumstance, those claims' independent source of subject matter jurisdiction would require their adjudication here. *Connecticut National Bank v. Fluor Corp., supra* at 963.

It is not clear from the complaint whether complete diversity exists. Plaintiffs do not allege the diversity statute. However, four out of five of the plaintiff associations appear to be New Jersey entities (*see* footnote 1, *supra* ); and Pru–Bache is alleged to be a Delaware corporation with its principal place of business in New York. The complaint does not allege the status of the fifth plaintiff, Trident, for diversity purposes. If Trident does not satisfy the diversity statute, then jurisdiction does not exist at all, since diversity must be complete on both sides of the case.

If plaintiffs replead, and wish to assert diversity as citizenship as an alternative basis of subject matter jurisdiction, they must do so explicitly in the amended pleading, and fully allege the jurisdictional facts.

Defendant also attacks the state and common law claims on their merits. In the present procedural posture, I do not reach those issues.

### CONCLUSION

For the foregoing reasons, I make the following order:

1. The First and Second Counts of the complaint, alleging violations of section 12(2) of the 1933 Act and 17(a) of the 1934 Act, are dismissed with prejudice and without leave to replead within thirty (30) days of the date of the order.

2. The Third and Fourth Counts of the complaint, alleging violations of section 15(c)(1) and 10(b) of the 1934 Act and accompanying rules, are dismissed with prejudice. Plaintiffs are granted leave to file and serve an amended complaint, if so advised, within thirty (30) days of the date of this order.

3. Decision on defendant's motion to dismiss the Fifth, Sixth, and Seventh counts of the complaint is deferred until plaintiff file an amended complaint. If no such amended complaint is timely filed, these counts will be dismissed without prejudice.

The foregoing is SO ORDERED.