# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**DOUGLAS DALEY,**
Appellee.

No. 4D19-3590

[December 2, 2020]

Nonfinal appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Marina Garcia Wood, Judge; L.T. Case No. 19-1325 CF10A.

Ashley Moody, Attorney General, Tallahassee, and Jessenia J. Concepcion, Assistant Attorney General, West Palm Beach, for appellant.

Carey Haughwout, Public Defender, and Christine C. Geraghty, Assistant Public Defender, West Palm Beach, for appellee.

### *ON APPELLEE'S MOTION FOR REHEARING*

PER CURIAM.

Appellee's motion for rehearing is denied.

LEVINE, C.J., concurs.
FORST, J., concurs specially with opinion.
GROSS, J., dissents with opinion.

FORST, J., specially concurring.

I join in denying Appellee Douglas Daley's motion for rehearing of the Court's opinion that reversed the trial court's order granting Daley's motion to suppress. The motion for rehearing and the dissenting opinion mischaracterize the record, the trial court's order, and the facts.

Contrary to the motion for rehearing, the trial court's order did not explicitly nor implicitly "reject" the testimony of the officer who stopped

Daley, *in part,* with respect to the bicycle light infraction. In fact, the order states "[The officer] spotted [Daley], who was riding his bicycle away from the perimeter; the bicycle had no headlights." Moreover, the officer did not testify that the bicycle light infraction was the sole basis for the stop. He testified that he stopped Daley because "[h]e did not have a light on his bike and, again, like I said, he matched the description of the suspect, the clothing of the suspect in the burglary by the victim."

The motion also reargues the merits, which were sufficiently addressed in our opinion. Daley matched the sex, race, and height of the suspect. He was wearing a grey hooded sweatshirt, as was the BOLO suspect. His direction of travel was headed from the location of the purported crime toward the perimeter set up several blocks away, as distinct from coming toward the officers from outside the perimeter. The BOLO suspect was described as being in his "30s"; at the time of the stop, Daley was 42 years old (per the booking sheet that is in the record). He was stopped while riding a bicycle without lights at 1:24 a.m., three blocks from where a crime had been reported moments earlier. To paraphrase the State's question posed at the suppression hearing, "if an officer can't stop somebody [per the BOLO-match and circumstances present in this case], then why are we having these perimeters set up in the first place?"

Accordingly, I join in denying Daley's motion, as it is a "request [of] the court to change its mind as to a matter which has already received the careful attention of the judges." *Lawyers Title Ins. Corp. v. Reitzes*, 631 So. 2d 1100, 1101 (Fla. 4th DCA 1993) (quoting *State ex rel. Jaytex Realty Co. v. Green*, 105 So. 2d 817, 818–19 (Fla. 1st DCA 1958)).

GROSS, J., dissenting.

The panel opinion ignores the law for appellate review of state appeals of orders granting motions to suppress evidence obtained by search and seizure. Contrary to well-established law, the panel opinion rejects the findings of fact of the trial judge, an approach starkly different from defense appeals of orders denying motions to suppress evidence under the Fourth Amendment.

At the hearing on the motion to suppress, the arresting officer testified that the "basis of the stop" was a bicycle light infraction. A BOLO described a burglary suspect as a black male, 5′11″ tall, wearing a gray, hooded sweatshirt. The BOLO did not specify whether the suspect was in a vehicle, on foot, or on a bicycle. When stopped, appellee was on a bicycle. He did not try to flee. The trial judge found that appellee was a black male,

2

5′10″ tall and that he wore a gray sweatshirt. A show-up identification established that appellee was not the burglary suspect.

At the hearing, the state took the position that the stop was based on the municipal infraction of riding a bicycle without a light. The defense contended that the stop was based on the "bare bones" BOLO. The trial judge rejected the state's position that the stop was based on the traffic infraction and found that the stop was based on the "legally insufficient" BOLO.

To explain how the panel opinion was wrongly decided, I adopt the well-reasoned, compelling argument contained in appellee's motion for rehearing:

> This Court held: "Due to the BOLO and the bicycle light infraction, the law enforcement officers had reasonable suspicion to stop Defendant. Thus, the trial court erred by granting Defendant's motion to suppress based solely on the conclusion that 'there was no reasonable suspicion to justify the traffic stop of Defendant.'" *Daley*, 2020 WL 5652362 at 3. In so holding, this Court overlooks or misapprehends the law and facts of this case.
>
> First, this Court relies extensively on the bike light infraction as the basis or contributing factor justifying the stop. However, the trial court, as the arbiter of the facts, rejected the officer's claim that he stopped Appellee because of the bicycle light infraction. Based upon the trial court's statements during the hearing and the written order, the trial court makes clear it believed the officer saw the missing bike light only after he had already stopped Appellee for the BOLO. The question of whether the bike light was the basis for the stop was placed squarely before the trial court and the trial court unquestionably rejected that fact by ruling that the basis for the stop was the BOLO alone.
>
> This Court is not at liberty to disregard or second-guess that finding. "A reviewing court is bound by the trial court's findings of fact—even if only implicit—made after a suppression hearing, unless they are clearly erroneous." *State v. Setzler,* 667 So. 2d 343, 346 (Fla. 1st DCA 1995); *see State v. K.C.,* 207 So. 3d 951, 953 (Fla. 4th DCA 2016) (trial court's ruling implicitly rejected State's contentions); *State v. Dorsey*, 991 So. 2d 393, 394 (Fla. 1st DCA 2008) (same). "We

3

must construe all the evidence, and reasonable inferences therefrom, in a manner most favorable to sustaining the trial court's ruling." *Hines v. State,* 737 So. 2d 1182, 1184 (Fla. 1st DCA 1999).

It is a well-settled principle of law that an appellate court, unlike a trial judge, is not a competent trier-of-fact. *See Hurst v. State,* 18 So. 3d 975, 988 (Fla. 2009) (the appellate court does not substitute its judgment for that of the trial court on questions of fact, witness credibility, or weighing the evidence); *Kellar v. Estate of Kellar,* 257 So. 3d 1044, 1045 (Fla. 4th DCA 2018) (the appellate court is prohibited from reevaluating the evidence and substituting its judgment for that of the finder of the facts); *Wilson v. State,* 191 So. 3d 537, 538–39 (Fla. 1st DCA 2016) (the trial court has the superior vantage point to judge bearing, demeanor, and credibility of witnesses).

There is good reason for this principle. "The liar's story may seem uncontradicted to one who merely reads it, yet it may be 'contradicted' in the trial court by his manner, his intonations, his grimaces, his gestures, and the like—all matters which 'cold print does not preserve' and which constitute 'lost evidence' so far as an upper court is concerned . . . ." *Broadcast Music, Inc. v. Havana Madrid Restaurant Corp.,* 175 F.2d 77, 80 (2d Cir. 1949) (footnotes omitted). "The best and most accurate record is like a dehydrated peach; it has neither the substance nor the flavor of the fruit before it was dried." *Id.* The trial court is in a superior position "to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor, and credibility of the witnesses." *Shaw v. Shaw,* 334 So. 2d 13, 16 (Fla. 1976).

As the Court's opinion stands now, the analysis directly contradicts the trial court's fact-finding that the stop was not based in any way on the traffic infraction. Instead, the Court's opinion reads as if it is making its own factual finding about the bike light infraction, unconnected with the trial court's factual finding. *Daley,* 2020 WL 5652362 at 2-3. If the Court is going to disregard this established maxim of appellate review, it needs to do so explicitly so the parties can challenge the ruling.

4

Second, this Court likewise misapprehends facts about whether Appellee "matched" the BOLO. This Court's opinion states that the BOLO was legally sufficient because Appellee "matched the gender, race, height, and clothing identified in the BOLO, while being mere blocks away from where the burglary had just occurred, and while riding his bike away from the burglary scene." *Daley*, 2020 WL 5652362 at 2. This misconstrues the facts.

The BOLO was for a black male, 5′11″-6′0″, in his 30's, wearing a nondescript gray sweatshirt. At the time of the stop, the officer knew that Appellee was a black male wearing a gray sweatshirt three blocks away from the burglary. The characteristics that did not match far outweighed any purported match. Appellee is in his 40's, not his 30's. The officer had no idea how tall Appellee was because he was sitting on a bike. There was no reason to think from the BOLO that the suspect was even on a bike. The suspect's direction of travel was unknown. It is a mischaracterization to state that Appellee was riding "away from the burglary scene" simply because he was riding in the neighborhood three blocks away.

These discrepancies and unknown factors, by definition, are not articulable facts to support reasonable suspicion for a stop. The details of the BOLO that match Appellee are so lacking that the description cannot provide particularized, reasonable suspicion to stop anyone. To state it more plainly, this Court's opinion authorizes the officer to stop any black man wearing a grey sweatshirt in the neighborhood. That is unquestionably not sufficient cause under the prevailing case law cited by the trial court and in the answer brief.

Third, the Court's opinion distinguishes the cases cited by the trial court based upon the incorrect facts and law noted above. In discussing *M.M. v. State*, 80 So. 3d 1125 (Fla. 4th DCA 2012), this Court asserts that the BOLO in *M.M.* provided only the gender and race of the suspect while the BOLO in the instant case was "substantially more detailed." To be clear, *M.M.* also included the fact that the police stopped the defendant within three minutes of the crime, three blocks away from the scene.

At the time of the stop in the instant case, the officer knew only that Appellee matched gender, race, grey sweatshirt, three blocks away within some unknown amount of time. The only additional fact in the instant case is that Appellee was wearing a nondescript grey sweatshirt. Such a common article of clothing is not distinctive enough to provide an articulable fact that leads to the conclusion that Appellee was the likely burglar. Moreover, this Court relied on the traffic infraction to bolster the basis of the stop, despite the trial court's rejection of that fact.

Likewise, in discussing *Gaines v. State*, 155 So. 3d 1264 (Fla. 4th DCA 2015), this Court emphasized the single discrepancy in the clothing description between Gaines and the BOLO as a distinction from the instant case where the clothing matched. This ignores the multiple discrepancies or unknowns in the instant case between the BOLO and Appellee, including Appellee's age, the bicycle, known height at the time of the stop, and direction of the suspect's travel. Again, this Court relied on the bike light infraction as an additional ground for the stop here that did not exist in *Gaines*, despite the trial court's rejection of that fact.

In discussing *Pantin v. State*, 872 So. 2d 1000 (Fla. 4th DCA 2004), this Court noted that the BOLO there lacked information about the speed, direction, or route of travel of the suspect. This Court fails to acknowledge, however, that the same information was lacking from the BOLO in the instant case. Instead, it relies on the fact that Appellee was present three blocks away and riding from the direction of the crime scene. But those facts do not "match" the BOLO; the BOLO in the instant case contained no information about mode or direction of flight. Nor do those factors provide reason to suspect Appellee more so than any other black male who may have been in the neighborhood.

Most disturbing here is the panel opinion's departure from the manner in which we treat a defendant's appeal of an order denying a motion to suppress. Where a trial judge says nothing in denying a motion to suppress, we view the facts from the hearing in the light most favorable to upholding the trial court's ruling. *See Pagan v. State*, 830 So. 2d 792, 806 (Fla. 2002) ("[A] trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions

derived therefrom in a manner most favorable to sustaining the trial court's ruling."); *Murray v. State*, 692 So. 2d 157, 159 & n.2 (Fla. 1997) (where the trial court made no factual findings in denying the motion to suppress, the appellate court reviewed "the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling"). Here, the trial judge made findings of fact which the panel opinion rejected. "The evenhandedness of justice as between subject and sovereign is a reassuring doctrine[.]" Irving Younger, *Sovereign Admissions: A Comment on United States v. Santos*, 43 N.Y.U. L. Rev. 108, 115 (1968). At a minimum, the law of appellate review should impartially apply the same deference to factual findings of the trial court in appeals brought by the subject and by the sovereign.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***